CONTINENTAL AIRLINES,
INC., Plaintiff,

v.

AMERICAN AIRLINES, INC., and
AMR Corporation, Defendants.

NORTHWEST AIRLINES,
INC., Plaintiffs,

v.

AMERICAN AIRLINES, INC., and
AMR Corporation, Defendants.

Civ. A. Nos. G–92–259, G–92–266.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 4, 1992.

Stephen D. Susman, Parker C. Folse, Susman Godfrey, L.L.P., Houston, Tex., for Continental Airlines.

Joseph D. Jamail, II, Jamail & Kolius, Houston, Tex., John S. McEldowney, Greer, Herz & Adams, Galveston, Tex., W. James Kronzer, Law Offices of W. James Kronzer, John L. Cooper, Bruce R. MacLeod, Neil A. Goteiner, John S. Martel, Farella

Braun & Martel, San Francisco, Cal., for Northwest Airlines.

G. Irvin Terrell, Finis E. Cowan, Jr., Baker & Botts, Kenneth Ross Citti, Mills Shirley Eckel & Bassett, Houston, Tex., Joe W. Redden, Jr., Beck, Redden & Secrest, Houston, Tex., David J. Beck, Fulbright & Jaworski, Houston, Tex., for American Airlines Inc. and AMR Corp.

## ORDER

KENT, District Judge.

Before the Court is Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court is of the opinion that the motion should be DENIED.

## DISCUSSION

Defendants move, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Northern District of Texas, Fort Worth Division ("Northern District"),[1] or, in the alternative, to the United States District Court for the Southern District of Texas, Houston Division ("Houston Division"). Section 1404(a) provides

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

### A.

■ As an initial matter, it must be noted that the "where it might have been brought" language refers to the statutes governing jurisdiction and venue in the federal courts. *Van Dusen v. Barrack,* 376 U.S. 612, 624, 84 S.Ct. 805, 813, 11 L.Ed.2d 945 (1964). Thus, a court may not grant a section 1404(a) motion to transfer unless, at the time suit was filed, venue could have been properly laid in the proposed transferee court and that court could have exercised subject matter jurisdiction over the action and personal jurisdiction over all the defendants. *Liaw Su Teng v. Skaarup Shipping Corp.,* 743 F.2d 1140, 1148 (5th Cir.1984).

■ The instant case is a suit for treble damages and injunctive relief for violations of the Sherman Act, 15 U.S.C. § 2. It is undisputed that Defendant American Airlines, Inc. ("American") is a Delaware corporation with its principal place of business at the Dallas–Fort Worth airport; that Defendant AMR Corporation is a Delaware corporation with its principal place of business in Fort Worth, Texas; and that venue was properly laid in this Court pursuant to 28 U.S.C. § 1391(b)–(c).

Given these facts, it is clear that this case could have originally been brought in either the Northern District or the Houston Division. A court in either the Northern District or the Houston Division could have exercised subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 15,[2] 26[3] and 28 U.S.C. §§ 1331,[4]

---

**1.** In actual fact, Defendants have moved only that this action be transferred to the Northern District of Texas. Their arguments, however, are premised on the notion that it would be more convenient to litigate this action in the Fort Worth Division of the Northern District. Therefore, the Court treats Defendants' motion as a motion to transfer to the Fort Worth Division of the Northern District. In any event, only the Dallas and Fort Worth Divisions of the Northern District could possibly be more convenient, and nothing in the record even remotely suggests that the Dallas Division might be more convenient than the Fort Worth Division. Therefore, even if the Court is in error in construing Defendants' motion as a motion to transfer to the Fort Worth Division, this fact does not change the Court's analysis.

**2.** 15 U.S.C. § 15 provides, in relevant part,

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy
>
> . . . .

**3.** 15 U.S.C. § 26 provides, in relevant part,

> [a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws
>
> . . . .

**4.** 28 U.S.C. § 1331 provides

1337.[5] Similarly, a court in either the Northern District or the Houston Division could have exercised personal jurisdiction over both Defendants, given that each has its principal place of business in the Northern District. For the same reason, venue could have properly been laid in the Northern District pursuant to 28 U.S.C. § 1391(b)–(c).1 [6] In short, this is an action which "could have been brought" in either the Northern District or the Houston Division. Therefore, the Court may consider the merits of Defendants' motion.

### B.

It is well settled that the party moving for a change of venue pursuant to 28 U.S.C. § 1404(a) has the burden of demonstrating why the forum should be changed. *See, e.g., Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). Exactly what this burden is, or, to phrase the question another way, the deference that should be given to a plaintiff's choice of forum, is less clear. Innumerable cases may be cited for the proposition that the moving party must demonstrate that the balance of relevant factors tips heavily in favor of transfer before a section 1404(a) motion may be granted. *See, e.g.*, 15 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3848, at 389 & n. 21 (1986) [hereinafter "Wright & Miller"]. However, as Professors Wright, Miller, and Cooper have noted, it is possible to argue that these cases overstate the deference that must be shown to a plaintiff's choice of forum.[7] Many of these cases were decided, or rely on cases that were decided, shortly after section 1404(a) was enacted. At that time,

it was widely believed that section 1404(a) merely codified the common law of *forum non conveniens*. Because there is generally a strong presumption in favor of the plaintiff's choice of forum in *forum non conveniens* cases,[8] many courts assumed that this presumption also applied in section 1404(a) cases. However, in *Norwood v. Kirkpatrick*,[9] the Supreme Court held that district courts have more discretion to transfer cases under section 1404(a) than they do to dismiss cases for *forum non conveniens*.

▮▮▮ Thus, it cannot be said with certainty that in ruling on a section 1404(a) motion a court must exercise a *strong* presumption in favor of plaintiff's choice of forum. By the same token, however, it is certainly a factor to be considered,[10] and both the Fifth Circuit and numerous district courts in this circuit have held that, subject to certain exceptions not relevant here, it is entitled to great deference. *See, e.g., Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied sub nom. Dow Chem. Co. v. Greenhill*, 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Menendez Rodriguez v. Pan American Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir.1962) (cited with approval in *Peteet, supra*, and *Time, Inc. v. Manning, supra*), *vacated on other grounds*, 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964); *Enserch Int'l Exploration, Inc. v. Attock Oil Co., Ltd.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987); *United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 683 (W.D.Tex.1986); *McRae v. Sawyer*, 660 F.Supp. 62, 65 (S.D.Miss.1986);

---

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

5. 28 U.S.C. § 1337 provides, in relevant part, The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies....

6. As noted above Defendants admit that venue was properly laid in the Southern District of Texas.

7. *See* 15 Wright & Miller, § 3848, at 389–92.

8. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981).

9. 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

10. For example, a case may not be transferred simply because the moving party would prefer another forum or because the claim arose elsewhere. Likewise, a transfer may not be granted if the only result would be to shift the balance of inconveniences from the moving party to the nonmoving party. *See, e.g.*, 15 Wright & Miller, § 3848, at 383–86.

*Young v. Armstrong World Indus., Inc.,* 601 F.Supp. 399, 401 (N.D.Tex.1984).

■ Moreover, in the instant case, additional factors suggest that greater deference should be shown towards Plaintiffs' choice of forum. First, Plaintiff Continental Airlines, Inc. ("Continental") resides in the Southern District. *See Rippy v. Crescent Feed Commodities, Inc.,* 710 F.Supp. 1074, 1079 (S.D.Miss.1988) (plaintiff's choice of forum is entitled to great weight, especially when that choice is in his home state); *Mead Data Cent., Inc. v. West Publishing Co.,* 679 F.Supp. 1455, 1465 (S.D.Ohio 1987) (relative importance of plaintiff's choice of forum increased because plaintiff corporation filed suit in state that was its principal place of business). Additionally, at least one court has held that the plaintiff's choice of forum is entitled to particular deference in antitrust cases. *See, e.g., Expoconsul Int'l, Inc. v. A/E Sys., Inc.,* 711 F.Supp. 730, 735 (S.D.N.Y.1989). After carefully considering Defendants' motion and Plaintiffs' Combined Response, the Court is of the opinion that Defendants have not demonstrated that a change of venue is warranted.

### C.

Defendants assert four related factors in support of their motion: 1) all of the alleged acts forming the basis of Plaintiffs' allegations occurred in the Northern District, therefore, the majority of witnesses and relevant documents are also located in the Northern District; 2) None of the parties nor any of the events at issue have any connection with Galveston; 3) there is no commercial airline service to Galveston, therefore this Court will be an inconvenient forum for all parties and witnesses; and 4) this Court's docket is unusually burdened, and retaining this case in this Court would only add to that burden. As these factors are all related, the Court considers each of them as appropriate in its consideration of the relevant factors.

### 1. Convenience of Witnesses

■ The convenience of the witnesses is arguably the most important factor in determining whether a case should be transferred pursuant to section 1404(a). Defendants argue that the majority of witnesses will be American executives who reside in the Northern District, and that the Northern District would probably be a more convenient forum for Plaintiffs' witnesses as well.

■ As an initial matter, the Court notes that Defendants' submissions on this issue are deficient. In considering the convenience of the witnesses, the Court must primarily consider the convenience of the *key* witnesses. Indeed, the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *See, e.g., Young v. Armstrong World Indus., Inc., supra,* 601 F.Supp. at 401–02. Thus, "the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." 15 Wright & Miller, § 3851, at 425. Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied. *See, e.g., id.* at 427–28 & n. 13.

By the same token, however, the Court is mindful of its repeated admonitions to the parties that "less is more" where pleadings are concerned, and the Court appreciates what it takes to be Defendants' good-faith efforts to comply with the Court's requests. Necessarily, therefore, if Defendants' failure to provide a list of key witnesses and a summary of their testimony were the only problem with Defendants' motion, the Court would certainly allow Defendants to amend their motion to make such a showing. However, no amendment is necessary, because the Court finds that even assuming that all the key witnesses are American executives who reside in the Northern District, this factor does not, given the precise facts of this case, compel a change of venue.

First, depositions and the like can be taken in the Northern District at Plaintiffs' expense. The key element to be considered

in determining the weight to be given to the convenience of the witnesses is the convenience of the key witnesses who will be called to testify at trail. *See, e.g., Sackett v. Denver & R.G.W.R.R.*, 603 F.Supp. 260, 261–62 (D.Colo.1985). These witnesses will necessarily be away from their duties while they are testifying no matter where trial is held. While they may be absent somewhat longer if trial is held in this Court, their inconvenience will not be increased a great deal.

The Galveston Division courthouse is not that far from the Northern District: it is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental United States. Moreover, this Court vigorously exercises its authority under Fed.R.Evid. 611(a) to ensure that each witness's testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum. Therefore, this Court can assure the parties that, if trial is held in this Court, the amount of time those key witnesses who testify at trial will be absent from their jobs will be kept to an absolute minimum. The only additional inconvenience will be the slightly longer travel time.

■ Second, where, as here, the key witnesses are (at least allegedly) employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial. *See, e.g., Galonis v. National Broadcasting Co.*, 498 F.Supp. 789, 793 (D.N.H.1980). This is especially true where, as here, the key witnesses are the employees of a party that is a transportation company and is therefore easily able to bring those witnesses to the forum. *See, e.g., Calva v. American Air Lines, Inc.*, 177 F.Supp. 238, 240 (D.Minn.1959); 15 Wright & Miller, § 3851, at 423 & n. 8.

Third, the Court finds Defendants' argument that there is no commercial airline service to Galveston to be of little merit. While there is no commercial airline service to the City of Galveston, Houston has two commercial airports, both of which are served by American. One of these is approximately 40 miles from Galveston and the other approximately 70 miles. Moreover, depending on the route chosen and the time of day, it often takes almost as long to drive from either of these airports to downtown Houston as it does to drive to Galveston.[11] Therefore, the Court finds that, even assuming that all the key witnesses are American executives who reside in the Northern District, the inconvenience suffered by these witnesses will be slight and that, therefore, this factor does not compel transfer.[12]

### 2. Location of Documents

■ Defendants assert that the majority of documents related to Plaintiffs' allegations are located in the Northern District. Even if this is true, however, it is unlikely that all of these relevant documents will be needed for trial, and the documents can be produced and examined anywhere for discovery purposes. Moreover, under Local Rule 11, the admissibility of exhibits may be determined prior to trial. Thus, the Court can ensure that Defendants need transport from Dallas to Gal-

---

**11.** For this reason, the Court is also not persuaded that it would be manifestly more convenient for the witnesses if this case were transferred to the Houston Division of the Southern District. This is especially true given that this Court, as noted below, has already given the parties a firm trial setting in July and August of 1993, while the trial track in the Houston Division is 24–36 months.

**12.** Additionally, Defendants argue that the Northern District will be more convenient for the expert witnesses. Several courts have held that the location of expert witnesses is entitled to little if any weight on a motion to transfer venue. *See, e.g., Babbidge v. Apex Oil Co.*, 676 F.Supp. 517 (S.D.N.Y.1987). The Court is not entirely convinced. It is possible to conceive of a case in which a particular expert is a key witness, or even the key witness. In this case, however, the location of experts is not a significant factor. Defendants' assert, and Plaintiffs do not dispute, that experts from all over the United States will likely be called to testify. Thus, the Court finds that the Northern District, the Houston Division, and this Court are equally convenient forums as far as experts are concerned. For reasons stated elsewhere in this Order, the Court finds Defendants' argument regarding the lack of commercial airline service to Galveston to be of little merit.

veston only those relevant, noncumulative documents necessary for trial. While this imposes some burden on Defendants, it is hardly compelling. *See STX, Inc. v. Trik Stik, Inc.*, 708 F.Supp. 1551, 1556 (N.D.Cal. 1988) (in absence of other grounds justifying transfer, location of defendant's records was insufficient to compel change of venue). Moreover, Plaintiffs will undoubtedly be required to produce at least some documents that will be admitted in evidence at trial. Transferring this case to the Northern District will only shift the burden to them to bring their documents from Houston to the Northern District.

### 3. Convenience of the Parties

 Defendants argue that "[t]he burden on American of litigating this case in Galveston would be enormous." The Court does not agree. As noted above, the Galveston Division Courthouse is not that far from the Northern District, and the slight inconvenience that will be suffered by Defendants as a result of having to litigate this case in Galveston hardly rises to the level necessary to compel transfer under section 1404(a). Although the Court has found no cases precisely on point, the statements of the court in *Jarvis Christian College v. Exxon Corp.*[13] are illustrative. In *Jarvis*, litigation was transferred from the Southern District of Texas to the Eastern District of Texas to be consolidated with cases pending there. On appeal, Exxon argued that it was an abuse of discretion for the district court to transfer the case away from the Southern District where its headquarters were located. The Fifth Circuit disagreed, stating

> [t]his case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States. The minor inconvenience Exxon may suffer in having to litigate this case

in Tyler—only 203 miles distant—rather than in Houston, can in no rational way support the notion of abuse of discretion. *Id.*, 845 F.2d at 528.

Additionally, the Court again notes that Defendants' complaint that there is no commercial airline service to Galveston is entitled to little weight. Given the parties' principal places of business and the relative location of commercial airports to Galveston, it will only be slightly more inconvenient for Defendants to litigate this case in this Court rather than in the Northern District. First, the Court notes that no courthouse in the Northern District is located "across the street" from either the Dallas–Fort Worth airport or either Defendant's office. Thus, if this case is transferred to the Northern District, Plaintiffs will have to travel some distance from the airport to the courthouse and Defendants will have to travel some distance from their offices. Second, if trial is held in this Court, Defendants and Plaintiff Northwest Airlines, Inc. ("Northwest") will have to travel from the airport to the Courthouse—a distance which is not considerably farther than the distance from the Dallas–Fort Worth Airport to either downtown Dallas or downtown Fort Worth—and Plaintiff Continental will have to travel from Houston to Galveston, a distance of approximately 50 miles. Thus, in the Court's view, it will be, for all practical purposes, no more inconvenient for Northwest to hold trial in this Court or in the Northern District. While it will be slightly more inconvenient for Defendants to hold trial in this Court, it will likewise be somewhat more inconvenient for Continental to hold trial in the Northern District, given that Continental's headquarters are in Houston. Therefore, the Court concludes that the convenience of the parties does not favor transfer to the Northern District.[14]

---

13. 845 F.2d 523 (5th Cir.1988).

14. By the same token, the Court does not dispute Defendants' assertion "that predatory pricing schemes 'are rarely tried, and even more rarely successful.'" Defs.' Mot. Trans. Venue at 8 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The Court is not

certain, however, that this is a factor it may consider in determining whether to grant Defendants' motion. On the particular facts of this case, however, the Court believes that this fact would not favor transfer. If this case is not tried then Defendants' will not be inconvenienced at all: depositions of Defendants' employees and production of documents in Defen-

### 4. Court's Docket

 Additionally, Defendants argue that because the docket of each of the district judges in the Fort Worth Division of the Northern District is substantially less than this Court's docket, the Court should transfer this case to that division to avoid "creating a situation in which cases important to residents of this Division may be delayed."

First, the Court disagrees with Defendants' contention that this case has nothing to do with the residents of the Galveston Division. In this case, Plaintiffs have alleged that Defendants engaged in certain activities in violation of the antitrust laws: to the extent that residents of the Galveston Division suffered from these actions (if they in fact took place), it cannot be said that they have no interest in the outcome of this litigation.

More importantly, however, Defendants' assertions ignore several relevant facts. First, this Court has given the parties an absolutely firm trial setting in July and August of 1993. By contrast, the most recent statistics indicate that the average time from filing to trial in the Northern District is 20 months. 1991 Federal Court Management Statistics at 82.

Additionally, while it is true that this Court does carry an unusually heavy caseload, the Court closed 655 civil cases in the calendar year 1991, the second highest total in the Southern District. Moreover, as of October 31, 1992, the Court had closed 508 civil cases, the highest total in the Southern District, and was current as to all but less than ten civil cases, none of which had been on the trailing docket for more than 30 days.[15]

Likewise, while it is true that criminal cases do take precedence over civil cases and this Court does carry a significant criminal docket, the Court is absolutely current as to all criminal cases through Sep-

tember 30, 1992. Thus, in all likelihood, this case will be resolved faster if it is retained in this Court.

### 5. Location of Alleged Wrongful Acts

 Additionally, Defendants argue that this case should be transferred because all the actions complained of occurred in the Northern District. While this is certainly a factor to be considered, it is only one factor, and it is not the rule that a case must be transferred if the actions complained of occurred in another forum. On the precise facts of this case, this factor is not sufficient to require a change of venue. *See Mead Data Cent. Inc. v. West Publishing Co., supra,* 679 F.Supp. at 1465.

### 6. Convenience of Counsel

 Many courts have held that the convenience of counsel is not a factor that may be considered in deciding a motion for change of venue. *See, e.g., Anderson v. Thompson,* 634 F.Supp. 1201, 1204 n. 2 (D.Mont.1986). In any event, in this case, even assuming that it is appropriate to consider counsels' convenience, this factor is entitled to little weight. Each party has employed numerous superb attorneys from across the country. Given the locations of the various attorneys employed, it would be slightly more convenient to retain the case in this Court as compared with the Northern District: several firms on both sides maintain offices in Houston, none maintain offices in Fort Worth. As to the rest of the attorneys, Galveston is as convenient as the Northern District.[16]

### 7. Other Considerations

The facts before the Court clearly indicate that Defendants will be inconvenienced only slightly, if at all, if this case is retained in this Court. Additionally, one other factor severely undercuts any merit

---

dants' control can be accomplished anywhere. Likewise, actually trying this case in this Court will not be a substantial inconvenience to Defendants.

**15.** The Court fully expects to be current as to all civil cases by the end of the year.

**16.** In this regard, for the reasons stated above, the Court finds Defendants' argument concerning Galveston's lack of a commercial airport to be without merit.

otherwise possessed by each of Defendants' arguments.

■ The day after Continental filed suit in this Court, Defendants initiated a declaratory judgment action against, among others, Continental and Northwest in the District Court for the Northern District of Illinois seeking a declaration that Defendants had not engaged in predatory pricing or otherwise violated the antitrust laws. That this action was filed at all indicates at least an initial willingness on Defendants' part to litigate the substantive issue of this action in Illinois. The Northern District of Illinois is considerably farther from the Northern District than this Court is, and even given that there is no commercial airport in Galveston, it would take much longer to travel to the Northern District of Illinois and would generally be more inconvenient to litigate this case in that district than it would be to litigate it in this Court. Therefore, the Court has great difficulty accepting Defendants' argument that they will suffer an "enormous and debilitating" burden if this case is not transferred to the Northern District.[17]

D. Transfer to the Houston Division

■ Alternatively, Defendants request a change of venue to the Houston Division. In addition to those factors already set out, the Court notes several additional factors which favor retaining the case in this Court. First, the Galveston Division courthouse is only about fifty miles from the Houston Division courthouse. In the Court's view, even if Defendants' headquarters, all the witnesses and documents, and the like were located within walking distance of the Houston Division courthouse, the inconvenience caused by retaining this case in this Court would be, in this age of convenient travel, discovery, trial testimony preservation, and communication, minimal at best.

Second, Defendants are corporations which have extensive contacts with the

Southern District of Texas. That American has no flights into the City of Galveston itself is of relatively little moment as Galveston County and Harris County, where the Houston Division courthouse is located, are contiguous. Again, it is not as if Defendants are being asked to defend this case in Alaska or in Maine (or, for that matter, in Illinois).

Additionally, while the caseload of virtually every court in the Southern District is substantially higher than the national average, the situation in the Houston Division is particularly acute. Due to an increase in both the number and complexity of criminal filings, the fact that several judgeships remain vacant, the recent retirement of Chief Judge DeAnda, and several other factors, the trial track in the Houston Division is two to three years. By contrast, the trial track in this Court is approximately nine months, and, as noted above, the Court has given the parties a firm trial setting for July and August of 1993.

E.

Finally, the Court notes that its ruling today is consistent with the rulings of other district courts confronted with similar factual situations.

In *Mead Data Cent., Inc. v. West Publishing Co., supra,* the plaintiff brought an antitrust action against the defendant, a competitor, in Ohio. The defendant moved to transfer to Minnesota, where it was headquartered, on the ground that the majority of witnesses would be its employees and the majority of exhibits would be documents located at its headquarters. The district court denied the motion for reasons almost identical to those relied on by the Court today. First, while the plaintiff's choice of forum was entitled to somewhat less deference because the acts complained of occurred in Minnesota, this fact was counterbalanced by the fact that plaintiff

---

17. The Court is not, however, basing its decision solely on this fact. Indeed, even if the Illinois' suit had never been filed, the Court would still, based on the totality of the record, retain this case here. The Court merely notes the existence of the Illinois litigation and the fact that its existence undercuts Defendants' arguments.

had brought suit in its home state.[18] Second, the fact that the key witnesses were the defendant's employees meant that their convenience was not as important because the defendant could compel their attendance at trial in Ohio, and transferring the case to Minnesota would only shift the burden to the plaintiff to transport its witnesses to Minnesota for trial. Third, the relevant documents could be produced and examined anywhere. The defendant would only be put to the inconvenience of transporting those documents necessary for trial to Ohio. *Id.* at 1465–67.

Likewise, in *Expoconsul Int'l, Inc. v. A/E Sys., Inc., supra,* a trade show sponsor filed an antitrust suit in the Southern District of New York against a competitor, which had its principal place of business in Connecticut. The defendant moved to transfer to Connecticut. The court denied the motion stating

> [d]efendant's principle reason for transfer is that its primary location is in Connecticut. It is difficult to accept defendant's claim that this district is inconvenient, since the Connecticut to New York City commute is not overly burdensome and defendant has had no apparent difficulty traveling into this district to transact business.

*Id.* at 737.

Similarly, in this case, American daily flies many planes into and out of this district, and as noted above, travel from the Northern District to this Court is not overly burdensome.

### F.

Therefore, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Transfer Venue is DENIED.

It is further ORDERED that the parties file no further pleadings on this matter in this Court. In particular, the parties are instructed that the Court will entertain no motions for reconsideration or the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

It is further ORDERED that each party is to bear its own taxable costs and attorney's fees, as may have been incurred pertaining to this issue.

It is further ORDERED that the parties continue substantive development of the case in consideration of the firm, pending trial date in July and August, 1993.

IT IS SO ORDERED.

---

18. Moreover, in the instant case, Continental has brought suit not only in its home state but also in its home *district.* By contrast, as noted above, Defendants' have previously shown a willingness to litigate these issues in a forum far from Texas.