Michael "Shawn" BLANSETT and Modesta N. Blansett, Individually and as Next Friends of McKenna Blansett and Blake Blansett, Minors, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., Defendant.

No. G–02–061.

United States District Court, S.D. Texas, Galveston Division.

April 26, 2002.

A. Craig Eiland, Houston, TX, for plaintiffs.

Barclay A. Manley, Fulbright & Jaworski, Houston, TX, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AND GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' NON–WARSAW CONVENTION STATE LAW CLAIMS

KENT, District Judge.

Plaintiffs Michael "Shawn" Blansett and Modesta Blansett (collectively "the Blansetts") bring this lawsuit against Defendant Continental Airlines, Inc. ("Continental") seeking to recover damages under the Warsaw Convention for injuries allegedly sustained by Shawn Blansett while riding as a passenger onboard a Continental Airlines flight from Houston, Texas to London, England on June 18, 2001. Specifically, Plaintiffs aver that Shawn Blansett suffered a debilitating cerebral stroke approximately one hour prior to arriving in London that was ostensibly caused by a blood clot that formed during the lengthy flight, a phenomenon typically referred to as "Deep Venous Thrombosis Syndrome" or "Economy Class Syndrome." Plaintiffs further allege that Continental never warned or advised Shawn Blansett of the likelihood of developing a blood clot in the lower extremities, nor allowed an onboard physician to examine or treat Shawn Blansett after he became visibly ill, nor consulted with any third party medical advice service regarding Shawn Blansett's condition, nor relayed critical information to the London ambulance and hospital personnel that eventually treated Shawn Blansett. As a result of this stroke, Plaintiffs claim that 36–year–old Shawn Blansett, who was once an able-bodied husband, father, and corporate executive earning a six-figure salary, is now bound to a wheelchair, unable to walk or talk normally, or even take care of his own basic needs. On the basis of these events, Plaintiffs filed suit in this Court on January 25, 2002. Shortly thereafter, Continental filed two dispositive motions, a Motion to Dismiss Plaintiffs' Non–Warsaw Convention State Law Claims on March 8, 2002, and a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) on March 11, 2002. Plaintiffs responded to both Motions on April 23, 2002. For the reasons articulated below, Defendant's Motion to Transfer Venue is hereby **DE-**

**NIED,** and Defendant's Motion to Dismiss is hereby **GRANTED.**

## I.

### A. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

■ Defendant Continental seeks a transfer pursuant to the Court's discretionary venue powers under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.").

■ The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet,* 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.,* 490 F.2d 155, 158 (5th Cir.1974) (declaring that whether to transfer venue is within the discretion of

the trial court and will not be reversed on appeal absent an abuse of discretion).

■ In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996) (Kent, J.); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993) (Kent, J.); *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (Kent, J.) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

■ Continental maintains that Plaintiffs' case should be transferred to the Houston Division principally because: (1) the vast majority of fact witnesses are located in the Houston Division, including the entire Continental flight crew; (2) Plaintiffs reside in Harris County, an area within the Houston Division; (3) Defendant is headquartered in Houston; (4) both Parties' counsel have offices in Houston; (5) any relevant business or medical records can be found in either Houston or London; (6) the events of September 11, 2001 have so severely crippled the airline industry as to make it unduly burdensome for Continental to assume the unnecessary travel expenses associated with trial in Galveston, especially if multiple lawsuits of this type are filed here; and (7) the alleged wrong occurred either in Houston or London. In response, the Blansetts point out that: (1) Continental does not adequately identify witnesses or their actual

places of residency; (2) all of the witnesses identified by Continental, with the exception of a lone passenger witness in Norway, are also employees of Continental whose convenience should be accorded less weight; (3) Plaintiffs' counsel is located in Galveston; (4) it is improbable that Continental will incur significant additional expenses by defending this lawsuit in Galveston rather than Houston; and (5) the alleged wrong occurred somewhere over the Atlantic Ocean or the United Kingdom.

1. *Availability and Convenience of the Witnesses and Parties*

The Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Gundle Lining Constr. Co. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Continental Airlines*, 805 F.Supp. at 1396. In the instant case, Continental stresses that almost all of the fact witnesses, including Plaintiffs, are located in the Houston Division. Specifically, Continental argues that Plaintiffs' case should be transferred because the entire Continental flight crew is "Houston based," including fourteen flight attendants and three pilots. Continental further stipulates that other Continental employees with pertinent knowledge of Continental's practices and procedures are also located in Houston. At an absolute minimum, a Defendant must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be

inconvenient for them to testify in Galveston. *See LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998) (Kent, J.). Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial. In the instant case, Continental has provided nothing more than a vague listing of various groups of individuals who Defendant believes *may* possess pertinent knowledge of the events giving rise to Shawn Blansett's illness and subsequent injuries. This amorphous list is accompanied by inadequate one-line blips regarding these witnesses' potential testimony at trial. Initially, the Court notes with some skepticism that Continental only identifies four of these individuals by name, two of whom are the Blansetts.[1] Even more significantly, Continental wholly fails to specify the exact places of residency of the fourteen flight attendants and three pilots who are supposedly "Houston based," or to explain why their testimony would be relevant and/or noncumulative. Rather, Continental only avers that these crewmembers do not live in Galveston. Continental's subtle yet seemingly meticulous omission strikes this Court as singularly peculiar, understandably causing this Court to query whether some, if not all, of these crewmembers live remotely to Houston or even entirely outside of the state of Texas, or alternatively, in a location in the Houston area that is equidistant or even nearer to the Galveston Division Courthouse than to the Hous-

---

1. In addition to the Blansetts, Continental identifies by name Peter Fahrenthold, the Managing Director of Continental's Risk Management Department, and Pat Claiborne, the Senior Manager of Continental's Risk Department Medical Program. Although the Court has never required parties seeking a venue transfer to identify every fact witness by name, Continental's failure to do so in this case is aberrant, particularly given that almost all of the unnamed individuals are Continental employees whose identities (and incidentally, addresses) are easily discoverable. Moreover, one of the two employed witnesses is simply a claims manager and it is difficult to imagine that he could possibly have *any* Fed.R.Evid. 602 personal knowledge of the facts surrounding this matter whatsoever.

ton Division Courthouse. As Continental is well aware, having dutifully served Texas cities for literally more than sixty years,[2] the greater Houston metropolitan area is comprised of nearly four million people sprawled across hundreds of square miles. People can live in the greater Houston area, and literally live eighty miles apart! It is perfectly conceivable, then, that an individual could live within the purview of the huge, multi-county Houston Division, but experience an exponentially greater inconvenience by traveling to the Houston Division Courthouse than to the Galveston Division Courthouse, both in terms of the actual number of miles traveled, as well as the degree of headache and hassle suffered along the way. *See Chretien v. Home Depot,* 169 F.Supp.2d 670, 674 (S.D.Tex. 2001) (Kent, J.) (determining that "it is preposterous for Defendants to suggest that a fairer trial would be had, or witnesses would be less inconvenienced, by directing their cars northward through heavy traffic and construction towards Houston rather than trouble-free southward towards Galveston"). Ironically, Continental propounded vigorous argument only nine years ago when it sought to *defend* venue in this Division in one of the largest antitrust cases in the history of the Fifth Circuit. *See Carlile,* 953 F.Supp. at 171 (reciting Continental's previous argument that "many Continental employees live as close to Galveston as to downtown Houston"). As this Court stated in Continental's favor in that case, "[i]t is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental Unit-

ed States." *Continental Airlines,* 805 F.Supp. at 1397 (rejecting American Airline's motion to transfer venue to the Northern District of Texas or the Houston Division of the Southern District of Texas).

If Continental's failure to provide a summary of witness testimony were the only problem with its Motion, the Court would certainly allow Continental to amend its Motion to make such a showing. However, no amendment is necessary because the Court finds that even if each of these witnesses were to provide relevant, non-cumulative testimony unavailable from any other source, this factor would not compel a change of venue in light of the precise facts of this case. The most important fact witnesses are undoubtedly the Blansetts, who, although residing in the Houston Division, obviously consent to testifying in Galveston. With the exception of the lone passenger witness located in Norway, all of the key witnesses identified by Continental are also employees of Continental. As Defendant is patently aware, this Court has frequently opined that the convenience of key witnesses who are employees of the Defendant "is entitled to less weight because that party will be able to compel their testimony at trial." *Continental Airlines,* 805 F.Supp. at 1397. The Court therefore accords minimal deference to the availability and convenience of the seventeen alleged Continental employees who serviced Plaintiff's flight, as well as the various other Continental employees who may theoretically possess knowledge of Continental's practices and procedures, to whatever extent their testimony is even relevant or non-cumulative at trial. More-

---

**2.** On July 15, 1934, Continental's first flight was flown by its precursor Varney Speed Lines on a 530–mile route from Pueblo, Colorado to El Paso, Texas with stops in Las Vegas, Nevada, and Santa Fe and Albuquerque, New Mexico. Since that time, Continen-

tal has serviced locations throughout the state of Texas, and is currently headquartered in Houston, Texas. *The History of Continental Airlines, at* http://www.continental.com/corporate.

over, it is obvious to this Court that the passenger witness residing in Norway will be equally inconvenienced by traveling to the Houston Division Courthouse as to the Galveston Division Courthouse.[3] Because Continental has failed to demonstrate that the availability and convenience of witnesses would in any way be impaired by a trial in Galveston, this factor does not support transfer.

In addition to balancing the availability and convenience of witnesses, the Court also considers the location of the Parties. In this case, Plaintiffs reside in Harris County, an area within the Houston Division, while Defendant is a Delaware corporation with headquarters in Houston. Although both Parties reside in the Houston Division, importantly, the Blansetts have chosen to file suit in this forum. Furthermore, it is entirely unpersuasive for Continental to suggest that it would be unfairly burdened by litigating this dispute in Galveston. Not only does Continental draw an enormous customer base from residents throughout the Galveston Division, but the Court vividly recalls that Continental sought the succor of this Court only nine years ago in a case that it alleged would determine its very corporate existence. The Court reiterates its observation in *Carlile*, a discrimination case filed against Continental in 1997: "The Court is not persuaded that the Galveston Division, which was a convenient forum for Continental to litigate the fate of its very corporate life and where hundreds of millions of dollars were at stake, is not a convenient forum in which to defend itself against a single plaintiff's discrimination claims just four years later." The holding in *Carlile* applies with equal force to the Blansetts' present tort claims against Continental.

953 F.Supp. at 171. In fact, the only material change that has occurred since Continental's antitrust lawsuit in 1993 is the completion of the Sam Houston Parkway, which should make Continental's journey to Galveston even more convenient and expeditious than it was before. Accordingly, this factor weighs against transfer.

### 2. Location of Counsel

While this factor is entitled to the least consideration, the Court notes that it does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration). In the case at hand, both Parties have retained counsel with offices in the Houston Division. However, Plaintiffs' counsel also operates out of an office in Galveston, just four blocks from the Galveston Division Courthouse. Thus, to whatever minimal extent relevant, this factor slightly favors retention.

### 3. Location of Books and Records

■ The location of books and records is not of paramount importance in a personal injury action. *See id.* at 826–27 (noting that a personal injury suit is typically not the type of action where books and records are vital); *Continental Airlines*, 805 F.Supp. at 1397 (observing that in a personal injury case "it is unlikely that all … relevant documents will be needed for trial, and … documents can be produced and examined anywhere for discovery purposes."). Regardless, because Defendant is headquartered in Houston, any relevant business records relating to Continental's practices and procedures are most likely

---

**3.** In order to minimize any potential inconvenience, however, the Court would encourage the Norwegian witness to take a Continental

flight into Ellington Field, an airport situated nearly equidistant from Houston and Galveston.

located in the Houston Division. Furthermore, some portion of Shawn Blansett's medical records can be found in London. If certain records do become relevant, however, the Court finds absolutely no inconvenience in transporting these documents to the Galveston Division Courthouse.

### 4. Trial Expenses

Neither Party provides specific information on the expenses and costs associated with trial in Galveston versus Houston. However, Continental propounds the general argument that the tragic events of September 11, 2001 have so severely crippled its financial health as to make it unduly burdensome for it to assume the unnecessary costs and expenses associated with trial in Galveston, specifically the "travel back and forth to Galveston with the concomitant loss of executive, managerial, and other personnel time as well as other costs associated with litigating away from the Houston headquarters." (Def.'s Mot. Summ. J. at 6.) Continental further speculates that multiple lawsuits of this type may be filed in Galveston, thereby enhancing this risk proportionately. Although this Court, like every other American institution and citizen, recognizes and grieves for the horrific tragedy and loss that occurred on September 11, it also sincerely believes that airlines like Continental cannot and should not be allowed to wrap themselves in the flag of 9/11, either indefinitely, or for frankly manipulative reasons. Continental continues to function as a common carrier throughout this country and the world, as do all of the other major commercial airlines, including those whose airplanes were actually hijacked on 9/11. As a result, it should be expected that lawsuits will be filed against Continental in forums throughout this country, and indeed that Continental *itself* will file suits in far-flung venues. If it is indeed the case

that Continental's financial outlook is so dire that it cannot muster the additional funds necessary for gasoline to get to Galveston, a city only fifty miles away from its base of operations in Houston, then Continental quite candidly should seek the protection of this country's bankruptcy laws. If this is not the situation, as the Court firmly suspects, Continental can and will be subject to suit in this and other reasonably convenient forums. Whether or not multiple lawsuits of this type will be filed in Galveston is entirely speculative, and in any case, unimpressive upon the instant venue equation, since each case must be viewed on an individual basis. Against the specific backdrop of Continental's previous willingness to file suit in this Court in equally desperate corporate life-threatening circumstances, Continental's argument in this regard is utterly unpersuasive.

Furthermore, the Court agrees with the Blansetts that it is unlikely that Continental will incur significant additional expenses in defending this lawsuit in Galveston. Galveston is only fifty miles away from Houston. Defendant's counsel, witnesses, and representatives may commute each morning from Houston for trial, rather than expend any additional monies on lodging, and they may also carpool for extra savings. Parking here is free and lunch restaurants are considerably more economical than in downtown Houston. Given the close proximity between Houston and Galveston, as well as this Court's cost-efficient manner of handling cases and comparatively shorter trial track, common sense dictates that the trial expenses will be likely less, and at worst, reasonably similar in both venues. Therefore, the Court concludes that this factor similarly favors retention.

### 5. Place of the Alleged Wrong

■ The Court generally considers the place of the alleged wrong to be a very

important factor in venue determinations. *See Henderson,* 918 F.Supp. at 1067 (observing that suits by nonresidents can work to delay the trials of resident plaintiffs). However, "this factor, like the other factors, is only part of the equation." *Dupre,* 810 F.Supp. at 827. In this case, Continental claims that the alleged wrong occurred either in Houston or London, since Shawn Blansett boarded the flight in Houston, became ill approximately one hour outside of London, and then was treated for his illness in London. However, the Blansetts contend that the alleged wrong took place somewhere over the Atlantic Ocean or the United Kingdom, given that Continental's failure to warn or advise Shawn Blansett of the risk of developing a blood clot, as well as Continental's improper treatment of Shawn Blansett after he exhibited signs of a stroke, occurred while the plane was flying over the Atlantic Ocean or over or on British soil. The Court believes that both Parties' interpretations are partially correct. If the alleged wrong is Continental's failure to warn, then the relevant events could have occurred anywhere between Houston and London. If the alleged wrong is Continental's improper treatment of Shawn Blansett's condition, then the relevant events probably occurred somewhere over the Atlantic Ocean or over or in the United Kingdom. In either or both cases, the place of the alleged wrong cannot be pinpointed to one particular location, but rather spans the entire flight path from Houston to London. Even if the wrong did occur exclusively in Houston or London, this fact by itself would not compel transfer. It is obvious that Continental enjoys an overwhelming business presence in the Galveston Division, such that this Court and the citizens of this Division have a substantial and legitimate interest in the outcome of this lawsuit. Consequently, the Court declines to disturb Plaintiffs' choice of forum on this solitary ground.

### 6. *Possibility of Delay and Plaintiff's Choice of Forum*

Finally, the Blansetts' decision to litigate this case in the Galveston Division of the Southern District of Texas is entitled to great deference. *See Peteet,* 868 F.2d at 1436; *Carlile v. Continental Airlines, Inc.,* 953 F.Supp. 169, 171 (S.D.Tex.1997) (Kent, J.); *see also United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 683 (W.D.Tex.1986) (asserting that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Although closer scrutiny is warranted when the Plaintiffs are not residents of the Galveston Division, as is the case here, the Court does not believe this is a case of blatant forum shopping. The Blansetts reside in nearby Houston, and like many other Houston residents, it may very well be the case that traveling to Galveston is significantly more convenient than struggling through rush-hour, construction-ridden downtown Houston. In addition, it should not be overlooked that a transfer to Houston will inevitably result in Plaintiffs losing significant time in having their claims resolved, since this case is set for a Rule 16 scheduling conference in less than two weeks time, but would go to "the end of the line" in any transferee court, even if the particular Houston judge's docket to which it might be assigned were current. This likelihood of real delay, combined with some amount of deference to the Blansetts' choice of forum, militates against a transfer to Houston.

Based upon all of these venue considerations, and in light of the specific facts of this case, the Court concludes that Continental has failed to carry its burden of demonstrating that a transfer is necessary to serve the interests of justice or for the

convenience of witnesses and parties. The Court therefore declines to disturb the forum chosen by the Blansetts and introduce the substantial likelihood of delay inherent in any transfer simply to avoid the minor inconvenience that Continental might theoretically suffer by litigating this matter in Galveston rather than Houston.

## B. Motion to Dismiss Plaintiffs' Non–Warsaw Convention State Law Claims

■ Continental also moves to dismiss Plaintiffs' Non–Warsaw Convention State Law Claims pursuant to Fed.R.Civ.P. 12(b)(6).[4] on the ground that the Warsaw Convention[5] provides the exclusive cause of action and remedy for Plaintiffs' claims. The Court agrees with Defendant's analysis, as do the Blansetts in their Response. The Warsaw Convention is an international treaty governing "all international transportation of persons, baggage, or goods performed by aircraft for hire." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 162, 119 S.Ct. 662, 668, 142 L.Ed.2d 576 (1999). Article 17 of the Convention establishes the conditions under which an airline may be liable for the personal injuries of passengers: "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *See id.* (citing 49 Stat. 3018). Article 24 of the Convention, as amended by the Montreal Protocol No. 4, further instructs: "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention ..." *Id.* at 174, 119 S.Ct. at 674.

■ Interpreting these specific provisions, both the United States Supreme Court and the Fifth Circuit have held that the Warsaw Convention provides the exclusive cause of action for a passenger alleging personal injuries sustained during international air travel, even if the passenger is unable to satisfy the elements necessary to recover under the Convention. *See id.* at 161, 119 S.Ct. at 668 ("We therefore hold that recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all."); *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir.1996) (rejecting the notion that the plaintiff could resort to state law causes of action because she failed to show that an accident had occurred under the Convention). Applying these principles to the case at hand, it is clear that the Blansetts are precluded from bringing any state law

---

**4.** A party is entitled to dismissal under Fed. R.Civ.P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. When considering a 12(b)(6) motion, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir.1996).

**5.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014 T.S. No. 876 (1934), note following 49 U.S.C. § 40105.

causes of action against Continental for Shawn Blansett's injuries, since Shawn Blansett allegedly sustained his injuries while riding as a passenger onboard Continental's international flight from Houston to London. The Court therefore concludes that Continental's Motion to Dismiss regarding Plaintiffs' state law claims for negligence and strict liability is meritorious.

## II.

For all of the reasons set forth above, the Court hereby respectfully **DENIES** Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and hereby **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Non–Warsaw Convention State Law Claims. The Court accordingly **DISMISSES WITH PREJUDICE** Plaintiffs' state law claims for negligence and strict liability *only*, without affecting any other claims pending in this action. The Court will, in due course, enter a Final Judgment regarding the dismissed claims. Each Party is to bear its own taxable costs and expenses incurred herein to date, as regards any matter treated in this Order.

**IT IS SO ORDERED.**