Linda A. LEMERY, et al. Plaintiffs,

v.

FORD MOTOR COMPANY Defendant.

No. CIV.A. G–02–204.

United States District Court, S.D. Texas, Galveston Division.

Nov. 19, 2002.

See also: 205 F.Supp.2d 710.

Alton C. Todd, Friendswood, TX, for Plaintiffs.

Michael S. Goldberg, Baker Botts, Houston, TX, John T. McDowell, McDowell Collmer, Houston, TX, for Defendant.

*ORDER DENYING REMAND, CERTIFYING THIS COURT'S HOLDING THAT IT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION FOR INTERLOCUTORY APPEAL UNDER 1292(b), AND CONDITIONALLY GRANTING FORD'S MOTION TO TRANSFER VENUE*

KENT, District Judge.

This is a products liability action brought by Plaintiffs Linda A. Lemery, Individually and as Executrix of Shirley A. Lemery; William L. Lemery, an Incapacitated Adult Person; Joseph V.A. Lemery, Jr., Individually; Diane L. Berry, Individually; and Galen Yarbrough, as Guardian of the Estate of William L. Lemery (collectively as "Plaintiffs"), against Defendant Ford Motor Company ("Ford") pursuant to the state laws of Texas. Now before the Court is Ford's Motion to Transfer Venue and Plaintiffs' Response in Opposition to Ford's Motion to Transfer Venue. After reviewing the well briefed Motions, the Court, in its October 11, 2002 Order, requested that the Parties submit additional briefing concerning this Court's subject matter jurisdiction. Following careful thought and deliberation, the Court concludes that is does have subject matter jurisdiction over this matter. Having determined that this action is properly before the Court, the Court finds that Defendant Ford Motor Company's Motion to Transfer Venue to the Northern District of New York, Albany Division, must be conditionally **GRANTED.**

## I. FACTUAL OVERVIEW

Shirley Lemery sustained traumatic injuries, which ultimately proved fatal, after she was involved in an accident in her 1994 Ford Taurus. Lemery was driving on an icy road when she suddenly lost control of her car and collided with a guardrail in Fort Ann, New York. Lemery's four adult children brought this action seeking damages from Ford on the grounds that the Taurus's air bags, which deployed at the time of collision, were a producing cause of Lemery's tragic death. Specifically, Plaintiffs allege that the airbags were unreasonably dangerous as manufactured, designed, and marketed.

At the time of Shirley Lemery's death, she was survived by four children: Dianne Berry, a resident of Fort Ann, New York; Joseph Lemery a resident of South Carolina; William Lemery, a resident of Brazoria County, Texas, who is an Incapacitated Adult Person that is mentally impaired and suffers from autism; and Linda Lemery, also a resident of Brazoria County, Texas. William's sister Linda is the Guardian of William's Person, while Galen Yarbrough is Guardian of William's Estate. Additionally, William Lemery is a ward of the County Court at Law No. 2 and Probate Court of Brazoria County. For these reasons, Plaintiffs originally filed this action in the County Court at Law No. 2 and Probate Court of Brazoria County, Texas.

Subsequently, Ford removed the action to this Court premised upon diversity jurisdiction. Plaintiffs filed a Motion to Remand based upon the "probate exception" to federal diversity jurisdiction, arguing that the wrongful death claim necessarily implicates William's guardianship estate, and therefore, must be tried in the Texas state court that it was removed from. All Parties agree that they are completely diverse; however, the Parties rigorously dispute whether this Court has subject matter jurisdiction based upon the "probate exception" to federal diversity jurisdiction.

On June 4, 2002, the Court denied Plaintiffs' Motion to Remand. The Court explained that the "probate exception" to federal subject matter jurisdiction was inapplicable because the "exception to the probate exception" was applicable. The Court stated:

In Texas, "[a] statutory probate court has concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as guardian." Tex. Probate Code § 606(e); *see also DB Entm't, Inc. v. Windle*, 927 S.W.2d 283, 286–87 (Tex.App.-Fort Worth 1996, orig. proceeding) (explaining that a state statutory probate court has concurrent jurisdiction with state district courts over wrongful death and survival claims by a person in the person's capacity as a guardian). Thus, because an action of this type could be brought in the district courts of Texas, which are courts of general jurisdiction, this matter may also be heard in this forum pursuant to the "exception to the probate exception" outlined in *Moore.*

In its June 4, 2002 Order, the Court assumed that this action was removed from a Texas "statutory *probate* court." However, in an abundance of caution and with proper deference to this highly technical aspect of state procedural law, the Court requested additional briefing on whether the lawsuit was removed from a statutory *county* court or a statutory *probate* court, and if the Court was incorrect in its assumption that the action was removed from a statutory *probate* court, whether or not this Court continued to have subject matter jurisdiction.[1]

## II. ANALYSIS

Plaintiffs re-urge the Court to remand this lawsuit because William Lemery's Estate's wrongful death claim falls within the probate exception to federal diversity jurisdiction since William's guardianship proceedings are ongoing. Plaintiffs contend that the continuing guardianship proceedings require the Plaintiffs to bring this action in the County Court at Law No. 2 and Probate Court of Brazoria County ("Brazoria Court"), which Plaintiffs argue is a statutory *county* court. Further, Plaintiffs contend that as a statutory *county* court, the Brazoria Court has exclusive jurisdiction over any claim by or against William's Guardianship Estate, and therefore, Plaintiffs could not have filed their action in any other Texas state court of general jurisdiction. Thus, Plaintiffs argue that the "exception to the probate exception," which this Court cited as the basis of its June 4, 2002 Order denying Plaintiffs' Motion for Remand, is inapplicable. Ford contends it is unclear whether the Brazoria Court is a statutory *probate* court or a statutory *county* court. However, Ford urges that the Brazoria Court's designation is insignificant because this Court would have jurisdiction either way, since a statutory *county* court is not acting within its probate jurisdiction merely because William's Guardianship Estate brings a wrongful death action unrelated to any matters appertaining to the guardianship itself. On that basis, Ford urges that the Court has jurisdiction, and prays that the Court will transfer this case to the Northern District of New York, Albany Division. The Court will now address each of the Parties' remarkably well reasoned arguments in turn.

### A. This Court has subject matter jurisdiction over this Action.

#### 1. County Court at Law No. 2 and Probate Court of Brazoria County is a statutory county court.

After reviewing the evolving and somewhat contradictory provisions of Tex-

---

1. See this Court's October 11, 2002 Order.

as law, the Court concludes the Brazoria Court that this action was removed from is a statutory county court. First, Tex. Gov't Code § 25.0221 defines County Court at Law No. 2 and Probate Court of Brazoria County as a statutory *county* court. Additionally, although the Brazoria Court has the actual words "Probate Court" in its title, it is not a statutory *probate* court because the definition of a statutory *probate* court specifically excludes county courts exercising probate jurisdiction. *See* Tex. Prob.Code § 3(ii) (A "statutory *probate* court" is defined as "a statutory probate court under Chapter 25, Government Code. A *county* court at law exercising probate jurisdiction is not a statutory *probate* court under this Code unless the court is designated a statutory *probate* court under Chapter 25, Government Code.") (emphasis added). Although Ford cites Texas case law that recognizes the Brazoria Court as a statutory *probate* court,[2] the recent amendments affirm that its designation has been changed to a statutory *county* court. *See* Act of May 26, 1997, 75th Leg. R.S., ch. 52 § 1 (amended 1997) (current version at Tex. Prob.Code § 3(ii)) (removing the language that previously had defined *county* courts at law with "probate" in their title as statutory *probate* courts) (emphasis added). The Court regrets its seeming inability to parse these subtle nuances previously, and apologizes to the Parties for having previously based its analysis (in denying remand) on the fact that the Brazoria Court is a statutory *probate* court. However, having determined that the Brazoria Court is a statutory *county* court, the Court is duty bound to pragmatically and cautiously ensure that it continues to have subject matter jurisdiction over this action despite its previous error, again giving proper deference to applicable state law, however tortured it might seem.

### 2. The probate exception to diversity jurisdiction does not apply.

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). Generally, such jurisdiction exists as long as complete diversity of citizenship and the requisite amount in controversy are present. *See* 28 U.S.C. § 1332(a); *Turton v. Turton,* 644 F.2d 344, 347 (5th Cir.1981). However, for compelling historical reasons, federal courts lack jurisdiction over proceedings that "interfere with" state probate proceedings, assume general jurisdiction of the probate, or assume control of property in the custody of the probate court. *See Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Waterman v. Canal-Louisiana Bank & Trust Co.,* 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80, 84 (1909); *Breaux v. Dilsaver,* 254 F.3d 533, 536 (5th Cir.2001); *Dragan v. Miller,* 679 F.2d 712, 713 (7th Cir.1982) (calling the probate exception "one of the most mysterious and esoteric branches of the law of federal jurisdiction"). The Fifth Circuit, in explaining the venerable background and underlying rationale for the probate exception, stated:

> There are several reasons why a federal court has no jurisdiction to probate a will or to administer an estate. Historically, the equity jurisdiction conferred by the Judiciary Act of 1789, 1 Stat. 73, and Section 24 of the Judicial Code is that of the English Court of Chancery in 1789. It did not extend to probate matters. The probate of wills and the

---

**2.** *See Greathouse v. McConnell,* 982 S.W.2d 165, 166 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *In re Ford Motor Co.,* 965 S.W.2d 571, 572 (Tex.App.-Houston [14th Dist.] 1997, orig. proceeding).

grand of letters of administration were exclusively within the jurisdiction of the ecclesiastical courts of England. In addition, some courts have said that probate matters are not "cases or controversies within the meaning of Article III of the Constitution." It has also been suggested that since the source of authority to make a will is derived from state law probate proceedings are part of the requirement to make it effective. *Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749, 751 (5th Cir.1963) (citations omitted). Although the term "interfere with" (state probate proceedings) appears fairly broad at first glance, the probate exception has been interpreted much more narrowly. *See Rice v. Rice Foundation*, 610 F.2d 471, 475 (7th Cir. 1979) (explaining the two different tests that the circuits have created to determine if exercising jurisdiction over a case "interferes with" state probate proceedings). Further, the Fifth Circuit recently reaffirmed this standard, stating, "In determining whether a suit in federal court 'interferes' with state probate proceedings, this court considers whether the plaintiff's claim 'implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties.'" *Breaux*, 254 F.3d at 536 (quoting *Blakeney v. Blakeney*, 664 F.2d 433, 434 (5th Cir.1981)).

Unfortunately, there is remarkably little case law that is analogous to the precise situation before the Court. The majority of the cases dealing with the probate exception concern administration of estates, while this Court found none dealing with guardianships. The Court recognizes that the Brazoria Court maintains continuing jurisdiction over William Lemery as an Incapacitated Adult. Furthermore, both the Guardian of his Estate and Person are parties to this action. However, this case deals exclusively with Ford's manufacturing, designing, and marketing of a 1994 Ford Taurus, and the Court therefore concludes that the Plaintiffs' claims do not "implicate the validity of the probate proceedings." Similar to the facts in *Breaux*, this case does not challenge the validity of the underlying probate proceeding, nor does it seek recovery from William Lemery's estate, nor does it require this Court to intervene in the Brazoria Court to assert control over estate property. Thus, the Court concludes that the probate exception is inapplicable to the facts presented in this action, and therefore, that this action is properly before the Court. Plaintiffs' Motion to Remand is consequently respectfully **DENIED**.

3. *Assuming the probate exception does apply, the exception to the probate exception does apply.*

 Because probate exception jurisprudence analogous to the present action before the Court is scarce, the Court alternatively concludes that even if the probate exception is applicable, the exception to the probate exception is also applicable. Even in cases where the probate exception is implicated, there is an exception to the probate exception that accords federal courts subject matter jurisdiction. "An exception to the general rule that federal courts are without jurisdiction to entertain matters affecting probate proceedings ... exists where a state by statute or custom gives parties a right to bring an action in courts of general jurisdiction." *Moore v. Lindsey*, 662 F.2d 354, 361 (5th Cir.1981); *see also Hurst v. Regis Low, Ltd.*, 878 F.Supp. 981, 986 (S.D.Tex.1995). Therefore, assuming the case falls within the probate exception, this Court must determine whether or not Plaintiffs could have brought this action in a Texas state court of general jurisdiction.

At the outset, the Court notes the significance of the fact that the Brazoria Court

is a statutory *county* court. If the Brazoria Court were a statutory *probate* court, as previously held, the exception to the probate exception is clearly applicable. *See* Tex. Prob.Code § 606(e) ("A statutory *probate* court has concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as guardian") (emphasis added). On the other hand, whether or not Plaintiffs could have brought this action in a forum other than the Brazoria Court is a more difficult question.

The Texas Probate Code appears to mandate that this action be brought exclusively in the Brazoria statutory *county* court. *See* Tex. Prob.Code § 606(c). That particular section states:

> In those counties in which there is *no* statutory *probate* court, but in which there is a county court at law or other statutory court exercising the jurisdiction of a probate court, *all applications, petitions, and motions regarding guardianships,* mental health matters, *or other matters addressed by this chapter shall* be heard in those courts and the constitutional county court, rather than in the district courts, unless otherwise provided by law.

*See id.* (emphasis added). As previously discussed, Brazoria County has a statutory *county* court rather than a statutory *probate* court. A statutory *county* court's exclusive jurisdiction over "matters addressed by this chapter" generally consists of any matters pertaining to and incident to an estate. *See* Tex. Prob.Code § 607(a) (titled Matters Appertaining and Incident to an Estate). In statutory *county* courts, matters appertaining and incident to an estate encompass:

> the appointment of guardians, the issuance of letters of guardianship, *a claim by or against a guardianship estate,* all actions for trial of title to land incident to a guardianship estate and for the enforcement of liens incident to a guardianship estate, all actions for trial of the right of property incident to a guardianship estate, and generally all matters relating to the settlement, partition, and distribution of a guardianship estate.

*See* Tex. Prob.Code § 607(a) (emphasis added). Seizing on the statutory language, Plaintiffs argue that William's Estate's wrongful death claim is literally a "claim by or against a guardianship estate." Thus, William's Estate's wrongful death claim is appertaining to the estate and is a "matter addressed by this chapter" under Tex. Prob.Code § 606(c), and therefore, William Lemery's Estate claim must be brought in the Brazoria Court to the exclusion of Texas District Courts. Moreover, Plaintiffs cite precedent that is analogous to the instant case. *See Tarrant County Hosp. Dist. v. Jones,* 664 S.W.2d 191, 196–97 (Tex.App.-Fort Worth 1984, no writ); *Adams v. Calloway,* 662 S.W.2d 423, 427 (Tex.App.-Corpus Christi 1983, no writ) (holding that an unliquidated tort claim is incident to an estate).

■■■ Ford urges that wrongful death suits are not encompassed under "matters appertaining and incident to an estate," despite the broad language found in Tex. Prob.Code § 607(a) ("a claim by or against a guardianship estate"). The Court agrees. First, the Texas Supreme Court, in construing the identical language "all claims by or against an estate," recently affirmed the "controlling issue" test in determining whether or not a matter is "appertaining to or incident to" an estate. *See Palmer v. Coble Wall Trust Co.,* 851 S.W.2d 178, 181–82 (Tex.1992). The controlling issue test defines a suit as "appertaining to or incident to an estate when the controlling issue is the settlement, partition, or distribution of an estate." *Id.* Specifically, the Texas Supreme Court expressly stated that wrongful death claims

can be brought in statutory *probate* courts only because of an express provision allowing such in recent Texas Probate Code amendments not because wrongful death claims are considered incident to an estate. *Id.* at 181; *see also* Tex. Prob.Code § 607(c) ( "In all actions by or against a person in the person's capacity as a guardian, a statutory *probate* court has concurrent jurisdiction with a district court.") (emphasis added); Tex. Prob.Code § 606(e) ("A statutory *probate* court has concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as guardian.") (emphasis added). In fact, the Texas Supreme Court expressly held that wrongful death claims are not encompassed in the broad language "all claims by or against an estate." *Palmer,* 851 S.W.2d at 181–82; *see also In re Ford Motor Co.,* 965 S.W.2d 571, 574 (Tex.App.-Houston [14th Dist.] 1997, orig. proceeding [leave denied] ). Therefore, Plaintiffs' wrongful death suit is not considered "appertaining to or incident to" an estate under Tex. Prob.Code § 607(a) because wrongful death suits are not included in the broad language "a claim by or against a guardianship estate."[3]

In Tex. Prob.Code § 606(c), the language "or other matters addressed by this chapter" could have only implicated Plaintiffs' wrongful death claims if those claims were considered appertaining to or incident to William Lemery's estate. Having determined that Plaintiffs' wrongful death claim is not encompassed under Section 607(a) of the Texas Probate Code, Section 606(c), the provision Plaintiffs cite for the proposition that they were required to file their action in Brazoria Court, is inapplicable. Thus, Plaintiffs could have, but did not have to, file this action in County Court at Law No. 2 and Probate Court of Brazoria County. Accordingly, this Court finds that Texas law does not prevent Plaintiffs from having brought this action in a Texas state court of general jurisdiction, and therefore, the exception to the probate exception is applicable. Under either analysis the Court must, again, conclude that Plaintiffs' Motion to Remand must be, and hereby is, respectfully **DENIED**.

*4. Certification of subject matter jurisdiction issue for interlocutory appeal under 1292(b).*

■■■ In this litigation, the Court acts with genuine caution in determining that this Court has subject matter jurisdiction given that product liability cases, such as this one, often are a tremendous expense to all Parties involved. The Court's precaution of requesting exhausting briefing in this action stems from the scarcity of law analogous to this lawsuit. It would pain the Court to see both attorneys of this excellence and well motivated Parties proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction. Accordingly, the Court further concludes that whether or not the probate exception encompasses wrongful death claims brought by a guardianship estate is a controlling question of law concerning this Court's subject matter jurisdiction, and that "there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Therefore, Plaintiffs have ten (10) days after the entry of this Order to

---

**3.** Additionally, the Texas Probate Code does not contain similar jurisdictional grants for statutory *county* courts to entertain any action by or against a person acting in the person's capacity as a guardian.

exercise this option and petition the Fifth Circuit Court of Appeals, in its discretion, to hear Plaintiffs' grievances by interlocutory appeal. 28 U.S.C. § 1292(b). The Court notes that Plaintiffs *must* file their notice of appeal with this Court and file a petition for permission to appeal with the Fifth Circuit Court of Appeals, both within the statutory ten (10) day period. *See Alabama Labor Council v. Alabama*, 453 F.2d 922, 924 (5th Cir.1972).

Additionally, if the Parties are aggrieved by this Court's analysis of the Texas Probate Code in alternatively determining that the exception to the probate exception does apply, the Fifth Circuit can certify a question to the Texas Supreme Court, whereas, this Court cannot. *See* Tex. R.App. P. 58. The Court also notes that it does not intend to burden its appellate court colleagues. Rather, despite that the Court feels quite confident in its present analysis, the Court certifies this issue for interlocutory appeal only to implore the Parties to challenge federal subject matter jurisdiction, if at all, prior to the Parties expending tremendous amounts of money and resources. Having determined that this Court has subject matter jurisdiction over this lawsuit, the Court can now turn to the merits of Ford's Motion to Transfer Venue, subject of course to any guidance either the Fifth Circuit or the Texas Supreme Court may see fit to issue.

### B. Ford carries its burden of demonstrating why this action should be transferred.

 Ford seeks a transfer to the Northern District of New York, Albany Division, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, Ford bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred). The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring that a transfer of venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

 In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1065 (S.D.Tex.1996); *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.*, 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock*, 661 F.Supp. 681,

682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics*, 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor").

Ford maintains that this case should be transferred to the Northern District of New York, Albany Division, primarily because (1) the majority of key witnesses reside in that District, and most are beyond the subpoena power of this Court; (2) the accident that is the basis of the lawsuit occurred in New York; (3) only two of the four plaintiffs reside in this District; and (4) a trial in Galveston will be more expensive because the majority of witnesses reside in New York. In response, Plaintiffs point out that (1) Ford cannot be seriously inconvenienced by a trial in Galveston considering the substantial business presence that Ford has in this Division; (2) two of the four plaintiffs reside in this Division as well as the Guardian of William Lemery's Estate; (3) since this is a products liability claim, the majority of the relevant witnesses will come from Ford's headquarters in Michigan, and similarly, that the true location of the alleged wrong is at Ford's headquarters where Ford defectively designed the 1994 Ford Taurus, not New York; (4) counsel for both parties are located in Houston; and (5) Plaintiffs' choice of forum in this Division is entitled to great deference.

### 1. Availability and Convenience of Witnesses and Parties

■ As this Court has often stated, the convenience of key witnesses is the most significant aspect of a motion to transfer venue. *See, e.g., Gundle Lining Constr.*

*Co. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Continental Airlines*, 805 F.Supp. at 1396. In support of its Motion, Ford contends that the majority of the key witnesses that it intends to call reside in Washington County, New York. Ford anticipates calling the four officers who responded to the accident scene, Shirley Lemery's personal physician, the emergency room physician, and the physician that prepared the autopsy report, all of whom reside in Washington County, New York. Ford contends that forcing it to present the physicians' testimony by alternative means, such as depositions, substantially prejudices Ford because their testimony is instrumental in determining exactly how the accident occurred. Specifically, Lemery's personal physician is expected to testify that Lemery had heart problems and abdominal surgery before the car accident. Ford's two theories of causation are that Lemery was not wearing her seat belt because of her physician's instructions concerning her recent abdominal surgery and/or that Lemery died of a heart attack while driving.

Plaintiffs argue that the only relevant witnesses in this case are Ford employees who can testify concerning the design, manufacturing, and marketing of the 1994 Ford Taurus. Plaintiffs contend that Ford's list of witnesses, although relevant, is cumulative. Additionally, Plaintiffs urge that Lemery's medical records and autopsy report, and deposition testimony will suffice for Ford to present its case against causation. Lastly, Plaintiffs point out that two of the four plaintiffs reside in this Division.

■ Generally, the Court concurs with Plaintiffs that the majority of the witnesses at trial will testify concerning design, manufacturing, and marketing of the 1994 Ford Taurus. Moreover, these

witnesses are entitled to less deference since most are Ford employees. *See Continental Airlines,* 805 F.Supp. at 1397 (explaining that witnesses who are employees of a defendant are "entitled to less weight because that party will be able to compel their testimony at trial"). The Court also agrees that the testimony of all four police officers concerning the accident scene is likely cumulative. However, not *one* of Plaintiffs' anticipated witnesses resides in this District, much less this Division. Furthermore, Ford's theory on causation will clearly require substantial testimony from at least some of the attending officers and all three doctors that Ford listed, and therefore, forcing Ford to rely on medical records or deposition testimony to present its case on causation will likely result in unfair prejudice. Unlike this Court, which is over 1,800 miles away from Washington County, New York, the Albany Division of the Northern District of New York has full subpoena power over every part of Washington County and can compel Ford's anticipated medical and factual witnesses' appearances, none of which being employees over whom it can exercise internal control. *See* Fed.R.Civ.P. 45(b)(2).

On the other hand, two of the four plaintiffs reside in this Division. Of even greater importance, the Court is gravely concerned about requiring William Lemery to travel outside of his home environment and county, considering that he is autistic and mentally impaired. The convenience to William Lemery is entitled to great consideration. Conversely, this Court discounts the inconvenience to Ford of producing even remotely located employees witnesses since it enjoys an overwhelming business presence in this District. *See Blansett v. Continental Airlines,* 203 F.Supp.2d 736, 743 (S.D.Tex.2002). Ordinarily, if the Court were able to subtract the special consideration that William Lemery's situation merits, this factor would clearly favor transfer. However,

the Court is concerned with shifting the burden and expense of trying a case on the other side of the country from Ford, a multi-billion dollar company, to disadvantaged William Lemery. Despite this concern, however, and given the precise facts of this case, Plaintiffs have not provided a compelling reason for the Court to believe that William Lemery will be an active participant in trial, or even an attending observer. Thus, fairly balancing the real-world concerns of both sides, the Court concludes that the convenience of all involved favors transfer.

### 2. Location of Counsel

Although the location of counsel is relevant to the venue inquiry, the Court ultimately places little emphasis on this factor. *See Dupre,* 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little consideration). Both Parties in this case have retained excellent counsel who maintain their offices in Houston. Therefore, this factor weighs against transfer.

### 3. Location of Books and Records

Generally, the location of books and records is of little importance in a personal injury action. *See Dupre,* 810 F.Supp. at 826–27. The majority of the relevant documents in this action will concern the design, manufacturing, and marketing of the 1994 Ford Taurus. Those documents are certainly located at Ford's headquarters in Dearborn, Michigan. Ford will not suffer any more inconvenience by delivering its voluminous documents concerning the 1994 Ford Taurus from Michigan to this Court than it would delivering them to the Albany District Court. As such, this factor does not operate either against or in favor of transfer.

#### 4. Trial Expenses

Ford does not present any specific evidence indicating that a trial in the Southern District of Texas would prove more costly than a trial in New York. However, Ford fairly contends that the travel expenses for the anticipated non-party witnesses to travel to Galveston from New York is much greater than the costs of trying this action in New York. Generally, the Court agrees with Ford, however some of this cost will be counterbalanced by requiring two of the four plaintiffs to travel from Galveston to New York. Accordingly, this factor favors transfer, but only slightly.

#### 5. Location of the Alleged Wrong

■ The place of the alleged wrong is of primary importance in the Court's venue determination. *See Henderson*, 918 F.Supp. at 1067. Plaintiffs argue that this case is about a defective Ford Taurus, a defect that occurred when the Taurus was designed, manufactured, and marketed. Hence, Plaintiffs persuasively urge, quite creatively, that the location of the wrong must then be Dearborn, Michigan, Ford's headquarters. Ford counters that the actual accident and all subsequent events occurred in New York. Although the Court finds that there is some merit to Plaintiffs' reasoning, there is *no* contention that the alleged wrong occurred in Galveston. Thus, this factor favors transfer because the actual accident happened in New York. Additionally, the Court notes that Plaintiffs' counsel has already endured the considerable expense to bring the vehicle in question to this Division. Although the Court regrets that Plaintiffs will have to endure the expense to ship the vehicle in question back to New York, the Court cannot take this unrelated consideration into account. The Court commends counsel on his exceptional and customary diligence, but counsel brought the vehicle here at his own procedural peril.

#### 6. Plaintiff's Choice of Forum and Possibility of Delay

Plaintiffs' choice to litigate this action in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics*, 661 F.Supp. at 683 (emphasizing that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Furthermore, the possibility of delay or prejudice if the case is transferred always plays a large role in the Court's venue analysis. *See Dupre*, 810 F.Supp. at 828. Here, this action is set for trial on April 28, 2003. Although the trial date is not so close as to merit denial on that basis alone, transferring this action will likely cause some delay. Accordingly, this factor militates in favor of retaining this lawsuit.

### III. CONCLUSION

Finally, the Court again sincerely commends the Parties' counsel for their superb and patient briefing and advocacy. The Court always listens with particular attention to everything that each of these fine lawyers argues, and truly applauds their advocacy skills. But, admiration aside, the Court must turn to the merits of all of the Parties' Motions. After substantial and careful deliberation, this Court is of the opinion that it has subject matter jurisdiction over this matter for the previously articulated reasons. However, this Court opts to proceed with caution rather than violate the time honored principle that federal courts are courts of limited jurisdiction. Accordingly, since the Court's decision is based upon questions where there is substantial ground for disagreement, the Court certifies this action, consistent with 28 U.S.C. § 1292(b), so that Plaintiffs may petition the Fifth Circuit Court of Appeals for permission to interlocutory appeal this jurisdictional matter.

Notwithstanding, the fact that Plaintiffs may take an interlocutory appeal does not affect this Court's jurisdiction to determine Ford's Motion to Transfer Venue. *See* 28 U.S.C. § 1292(b). After examining the relevant venue factors, coupled with the specific facts of this lawsuit, the Court conditionally concludes that Ford has carried its burden of demonstrating that a transfer to the Northern District of New York, Albany Division, is more convenient to all of those involved and necessary to serve the interests of justice. Although this Court's determination was an extremely close one, the considerations favoring transfer suffice to outweigh the substantial deference that the Court affords Plaintiffs' choice to litigate this action in Galveston. Therefore, Ford's Motion to Transfer Venue is conditionally **GRANTED**, as now provided. Cognizant of the fact that an immediate transfer would undermine Plaintiffs' right to petition the Fifth Circuit for permission to take an interlocutory appeal of the instant Order, the Court will retain this action for a period of thirty (30) days. If Plaintiffs elect not to petition the Fifth Circuit under 28 U.S.C. § 1292(b), this action shall be transferred upon the expiration of thirty (30) days. If Plaintiffs do exercise their option to petition the Fifth Circuit, this case shall remain here, on stay, until the resolution of their petition, or possibly, the resolution of their interlocutory appeal. After final resolution of such, absent reversal or modification by the Fifth Circuit Court of Appeals, this lawsuit shall be transferred to the Court's able colleagues in the Northern District of New York, Albany Division.

**IT IS SO ORDERED**.