**CONDITIONALLY GRANT; and Opinion Filed June 15, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01032-CV

## IN RE ACE AMERICAN INSURANCE COMPANY, UNDERWRITERS SAFETY AND CLAIMS, INC., AND DAWNMONIQUE LEE, Relators

**Original Proceeding from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-02114**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Boatright
Opinion by Justice Boatright

Relators were sued in state district court in Dallas County, Texas. They filed a motion to dismiss the case based on forum non conveniens, arguing that the real party in interest's claims should be litigated in Arizona. The court denied relators' motion. They have filed a petition for writ of mandamus in this court. We conditionally grant the writ.

The real party in interest, Doug Vates, is the plaintiff in the underlying suit. Vates is an Arizona resident who injured his shoulder while working at a bakery in Arizona. He filed a workers' compensation claim with the Industrial Commission of Arizona. Ace American Insurance Company insured the Vates workers' compensation claim, and it assigned Dawnmonique Lee, a Dallas County resident who was an employee of Underwriters Safety and Claims, Inc., to adjust the claim.

The Industrial Commission of Arizona ruled that Vates had suffered a permanent partial disability and authorized medical treatment for him. The Commission also stated that it would authorize permanent benefits and medical maintenance in a separate notice.

Before the Commission issued another notice, Vates sued Ace, Underwriters, and Lee in Texas. Vates alleged that Ace refused to pay insurance benefits in a timely manner and that its refusal breached the duty of good faith and fair dealing under Arizona law. He also claimed that Underwriters and Lee did not adequately investigate his claim and that they had decided to ignore evidence of his injury. Vates argued that this aided and abetted Ace's breach and asked for actual and punitive damages under Arizona law. Relators filed a motion to dismiss based on forum non conveniens and, when it was denied, sought mandamus relief here.

To be entitled to mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co*., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *In re Pirelli Tire*, *L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding). An adequate remedy by appeal does not exist when a motion to dismiss for forum non conveniens is erroneously denied. *Id*. at 679. Mandamus relief is available from the denial of a motion to dismiss based on forum non conveniens. *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015) (orig. proceeding).

In their petition for writ of mandamus, relators contend that the suit is properly brought in Arizona under section 71.051 of the Texas Civil Practice and Remedies Code, which provides that, if a court of this state finds that a personal injury claim "would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action." TEX. CIV. PRAC. & REM. CODE ANN.

§ 71.051(b) (West Supp. 2017). When making this finding, a court must consider six factors. *Id*. We will discuss them one by one.

*1) An alternate forum exists in which the claim or action may be heard*

Vates does not dispute this factor. In addition, the relators stated in their motion to dismiss that they are amenable to jurisdiction in Arizona. The first factor under section 71.051(b) weighs in favor of litigating Vates's claims there.

*2) The alternate forum provides an adequate remedy*

Vates brought his claims under Arizona law. He does not dispute that the second factor favors a suit in Arizona.

*3) Maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party*

Vates quotes *In re Mantle Oil & Gas, LLC* for the proposition that, in examining this factor, "the trial court considers, among other things, the location of relevant documents and evidence and whether a majority of witnesses may be reached by compulsory process in Texas." 426 S.W.3d 182, 192 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). He says that "significant portions of the documents, witnesses, and proof" supporting his claim are in Dallas County. In support of this assertion, he simply claims that Lee has them in Texas. However, relators point out that there is no evidence of any documents in Texas. Vates concedes that he possesses medical records and other documents in Arizona. And relators cite record evidence showing that fifteen witnesses reside in Arizona. Relators also point out that the Industrial Commission of Arizona, where Vates submitted his administrative claim, is not in Texas. The briefing and record presented to us in this original proceeding therefore indicate that most of the documents and evidence that the parties consider relevant are in Arizona.

Vates also argues that maintaining his suit here would not work a substantial injustice because Texas Rule of Civil Procedure 201 grants the state district courts here power to issue subpoenas for depositions and documents within Arizona, and that Arizona Rule of Civil Procedure 45.1 authorizes subpoenas for deposition testimony. He suggests that the importance of the power to compel witnesses to appear at trial is overemphasized and avers that live testimony of physicians, for example, is rare. Vates concludes that use of video depositions of witnesses obviates the need for witnesses to attend trial. However, Vates cites no legal authority for the notion that this is a satisfactory substitute for compulsory witness testimony at trial. Relators note that the vast majority of likely witnesses who have been identified are Arizona residents and that the one who is not, Lee, is a party to the lawsuit and can be compelled to attend a deposition or setting without service of process. Thus, the briefing and record in this case support the conclusion that only deposition testimony, not live testimony, might be compelled for most witnesses if the suit were maintained in Texas, but that all identified witnesses might be compelled to testify in person if a suit were maintained in Arizona.

Because the briefing and record in this case indicate that most of the documents, evidence, and witnesses are in Arizona, the third factor weighs in favor of maintaining a cause of action there.

*4) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim*

Relators have stated that Arizona can exercise jurisdiction over all properly joined defendants. Vates admits that Ace is subject to the jurisdiction of Arizona courts, but he asserts that an Arizona court might not have jurisdiction over Underwriters and Lee because, first, they are not licensed with the Arizona Department of Insurance, and, second, Underwriters does not maintain a registered agent in Arizona. In support of this assertion, Vates cites *Louis v. Flagship*

–4–

*Airlines, Inc.*, 181 F.3d 79 (1st Cir. 1999) (unpublished table decision), *available in* 1999 WL 525947 (1st Cir. 1999), an opinion that has no precedential value. In any event, the court held merely that it lacked personal jurisdiction over an insurance adjustor. *Id.* at \*2–3. The opinion does not address the proposition for which Vates cites it.

Relators respond that Underwriters and Lee have admitted that they are amenable to the jurisdiction of Arizona courts. This is significant, relators contend, because the Arizona long-arm provision, Arizona Rule of Civil Procedure 4.2(a), allows Arizona courts to exercise jurisdiction over a person to the maximum extent permitted by the United States Constitution. Rule 4.2 also provides that a party may serve any person located outside Arizona as provided in the rule. Relators note that the Texas Supreme Court has held that state long-arm statutes should be read simply according to their plain meaning. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 691 (Tex. 2008) (orig. proceeding). Vates does not address these arguments. The fourth factor weighs in favor of jurisdiction in Arizona.

*5) Whether the balance of private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state*

The Texas Supreme Court has identified eight interests to consider under the fifth factor listed in Texas Civil Practice and Remedies Code section 71.051(b). *Pirelli*, 247 S.W.3d at 676–77 (adopting the United States Supreme Court's analytical framework in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). We will discuss each of the eight interests in turn.

*i.) Ease of access to sources of proof*

Vates suggests that most of the relevant documents are in Texas, but he does not point to any record evidence supporting that contention. He also concedes that he possesses medical records and other documents in Arizona and that the Industrial Commission of Arizona has a file

on this matter. And he says that the physical location of records "in [this] modern electronic age . . . is far less significant" anyway. The first interest weighs in favor of litigation in Arizona.

*ii.) Availability of compulsory process for unwilling witnesses and cost of obtaining testimony of willing witnesses*

Vates says that the Dallas County district court has subpoena power of the production of documents and deposition witnesses in Arizona. Relators respond that Arizona courts would have subpoena power over documents and all witnesses in Texas and that securing the subpoenas would be easier in a suit maintained in Arizona. Relators argue that Arizona Rule of Procedure 45.1 would allow a one-step process, while subpoenaing Arizona witnesses and documents from Texas would be more cumbersome, requiring a step under Texas Rule of Civil Procedure 201.1, and another under Arizona rule 45.1. Vates does not dispute this.

Relators also suggest that most of the documents and witnesses are in Arizona, and the record supports their contention. Although Lee is a Texas resident, Vates is an Arizona resident and the corporate defendants and relators are Arizona companies. Relators aver that they are amenable to service in Arizona. Vates also received medical treatment in Arizona and, again, the Industrial Commission of Arizona is not in Texas. Vates points to no legal authority indicating that the ability to subpoena documents and witnesses several states away might outweigh the convenience of having local availability of documents and witnesses. Nor does he contend that having Arizona witnesses testify in Texas would be less expensive than having Arizona witnesses testify in Arizona. Accordingly, the second interest weighs in favor of litigation in Arizona.

*iii.) Possibility of viewing the premises*

Relators note that it would be difficult for a Dallas jury to view the scene of the accident in Arizona. Vates does not dispute this. The third interest supports litigation in Arizona.

*iv.) All other practical problems that make trial easy, expeditious, and inexpensive*

Relators argue that getting willing witnesses to testify in Texas would be expensive; Vates contends that relators overstate the cost. However, Vates does not attempt to explain how this might weigh in favor of bringing suit in Texas. He concedes that relators have said that they would take testimony from Arizona treating-physicians, fact-witnesses, and expert-witnesses, but Lee is the only Texas-based witness he has identified. He notes that many plaintiffs in similar cases have actually retained experts located in the state of Texas, but he does not say that he would do so. Even if Vates were correct that relators have exaggerated the expense of having Arizona-based witnesses testify in Texas, he does not show that it would cost less than having Arizona witnesses testify in Arizona. All briefing and record evidence indicate that there would be more witnesses from Arizona than Texas. The fourth interest supports holding the trial in Arizona.

*v.) Administrative difficulties for courts*

Vates suggests that a trial in Dallas would be more convenient than one in Phoenix. To support this contention, he lists some of the factors that would make trial here convenient, like Lee's residency and the notion that a substantial amount of the claims process was conducted here. However, he does not attempt to demonstrate that these factors outweigh the factors indicating that a trial in Arizona would be convenient, like his Arizona residency, the corporate defendants' Arizona ties, and the Arizona location of the accident, medical treatment, and workers' compensation claim. Relators contend that a trial in Texas would be more expensive than one in Arizona, referring back to their argument that subpoenaing witnesses in a Texas court would be more cumbersome than subpoenaing witnesses in an Arizona court. The fifth interest indicates that Arizona would be the better forum.

*vi.) Burden of imposing jury duty on people in the community with no relationship to the litigation*

Vates does not address the burdens of jury duty. As relators suggest, a Dallas County resident called to serve as a juror in a case (a) about an accident that happened in Arizona (b) to a man from Arizona (c) regarding a workers' compensation claim filed in Arizona against (d) companies incorporated in Arizona and (e) tried under Arizona law would likely not see a relationship between the case and Dallas County, Texas. The sixth interest favors bringing suit in Arizona.

*vii.) Local interest in having localized controversies decided at home*

Vates says that Dallas County and the State of Texas have a localized interest in deciding this case. To support that proposition, he quotes *Quixtar Inc. v. Signature Management Team, LLC*, 315 S.W.3d 28, 33 (Tex. 2010), which held that there "is a connection to Texas when one of the parties is a Texas resident and at least some justification for the burden to Texans of providing judicial resources for the dispute." Relators do not dispute that Lee is a Texas resident and that the case has at least some connection to Texas. Instead, they contend that Lee's residency does not amount to a significant connection and that the Texas Supreme Court has held that it "is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *Pirelli*, 247 S.W.3d at 676 (citation and quotation marks omitted). Relators also note that *Quixtar* held that a non-resident's choice of forum is due "substantially less deference" than a resident's choice. *Quixtar*, 315 S.W.3d at 33. Therefore, *Quixtar* does not appear to be helpful authority for Vates's argument.

Vates cites a federal case, *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002), for the proposition that "the place of the alleged wrong is of primary importance." He contends that Texas is the place of the alleged wrong because Lee made the claim adjustment here, but he cites no legal authority for the notion that the wrong was committed only in Texas. He cites

*Hillerich & Bradsby Co. v. ACE American Insurance Co.*, No. CV 11-75-H-DWM, 2012 WL 2359488, at *1 (D. Mont. June 20, 2012), for the proposition that facts surrounding the insurer's handling of a claim center on where the insurer makes coverage decisions and where it communicates them to the insured, but this does not foreclose the possibility that other events also constitute the alleged wrong here.

Indeed, federal cases indicate that Texas is not the only place where the wrong occurred. For example, in a case out of Pennsylvania, an insurance company and the corporate insured were Pennsylvania corporations, the policy was issued in Pennsylvania, and the plaintiffs' misunderstanding about coverage occurred in Pennsylvania, but the decision to deny coverage occurred in California. *Asplundh Tree Expert Co. v. Pac. Emp'rs Ins. Co.*, No. Civ. A. 90-6976, 1991 WL 147461, at *7 (E.D. Pa. July 25, 1991). The court determined that the place of injury was not in California where the claim was adjusted but was in Pennsylvania, "where the failure to receive the allegedly expected benefits was felt." *Id.* The court held that Pennsylvania had "a compelling interest in regulating the conduct of insurers operating in Pennsylvania and contracting with its citizens." *Id.* In our case, Vates failed to receive benefits in Arizona, which would be the place of injury under the court's reasoning in *Asplundh*. In this way, federal cases indicate that the site of the tort is of primary importance. However, they also support the conclusion that part of the alleged tort here might have happened in Texas and another part in Arizona and that the Arizona part might be more important than the Texas part. Accordingly, the seventh interest does not weigh in favor of litigation in Texas.

*viii.) Problems with conflicts of law and applying foreign law*

Vates says that the state district court in Dallas County is familiar with the applicable law that governs this case and that there will be no confusing issues of conflicts of law. To support his

contention, Vates cites a series of federal cases indicating that Arizona and Texas workers' compensation laws do not differ substantially from one another. But, as relator notes, this is not an argument that the laws are the same, and it is unlikely that a Texas judge would be more familiar with Arizona workers' compensation law than an Arizona judge would be. Accordingly, the eighth and final interest does not weigh in favor of a suit in Texas.

The eight interests cannot be applied formulaically, *Pirelli,* 247 S.W.3d at 676, but, taken together, they indicate that the balance of the private interests of the parties and the public interests of the State do predominate in favor of bringing the action in Arizona.

*6) The stay or dismissal would not result in unreasonable duplication or proliferation of litigation*

Vates does not dispute that this factor weighs in favor of bringing suit in Arizona.

Therefore, the six factors listed in section 71.051(b) of the Texas Civil Practice and Remedies Code indicate that Vates's claim should be litigated in Arizona. When all of the section 71.051(b) factors in a case favor the conclusion that an action or claim would be more properly held in a forum outside Texas, as they do here, the statute requires that the trial court grant a motion requesting that it decline to exercise its jurisdiction. *In re Gen. Elec. Co.*, 271 S.W.3d at 693–94. A trial court abuses its discretion if it denies a motion to dismiss for forum non conveniens when all of the section 71.051 factors weigh in favor of granting the motion. *Id.* A trial court's erroneous denial of a forum non conveniens motion cannot be adequately remedied on appeal and therefore warrants mandamus relief. *Bridgestone*, 459 S.W.3d at 569.

Because all of the section 71.051 factors weigh in favor of granting relators' motion to dismiss, we conclude that the trial court abused its discretion by denying the motion and that relators are entitled to mandamus relief. Accordingly, we conditionally grant relators' petition for writ of mandamus and direct the trial court to issue a written order vacating the August 11, 2017

order denying relators' motion to dismiss for forum non conveniens, granting the motion to dismiss for forum non conveniens, and dismissing real party in interest Doug Vates's claims without prejudice. A writ will issue if the trial court fails to comply with this opinion and the order of this date within twenty-one (21) days of the date of this opinion.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

171032F.P05